UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMALA BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01075-TWP-MJD |
| ) | |
| CHARLES HAGEL, ) | |
| Secretary, Department of Defense, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Charles Hagel, Secretary of the Department of Defense ("the Secretary of Defense") ([Filing No. 36](Filing No. 36)). Plaintiff Tamala Baker ("Ms. Baker"), *pro se*, initiated this lawsuit after she was terminated from her employment with the Defense Finance and Accounting Service ("DFAS"), an agency within the Department of Defense. She alleges wrongful termination based on race, color, disability, age, religious discrimination and retaliation for protected activity. DFAS alleges that it terminated Ms. Baker's employment because of excessive absences and absences without leave. After answering the Complaint, the Secretary of Defense moved for summary judgment on the basis that Ms. Baker cannot establish a *prima facie* case of discrimination. For the following reasons, the Court **GRANTS** the Motion for Summary Judgment.

### I. BACKGROUND

The following material facts are not necessarily objectively true; but, as required by Fed. R. Civ. P. 56, both the undisputed and disputed facts are presented in the light most favorable to

Ms. Baker as the non-moving party. See *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Ms. Baker started working at DFAS in June 1993. At the time her employment was terminated in May 2013, she was an accounting technician in the transportation payments office. While employed at DFAS, Ms. Baker converted to Islam in July 1999 and was open about her conversion in the workplace. She informed her supervisor, Pamela Calvert ("Ms. Calvert"), of her conversion to Islam and asked for Friday afternoons off work for worship service. Sometime in the winter of 2011, a Caucasian, male, non-Muslim co-worker called Ms. Baker a "f***ing Muslim terrorist" from across the office. This co-worker was later promoted to be a supervisor for the team on which Ms. Baker was assigned. She filed an Equal Employment Opportunity ("EEO") complaint regarding the derogatory comment, and DFAS settled that dispute with Ms. Baker. DFAS did not fully restore credit hours and leave time as required by the prior EEO settlement agreement.

Ms. Baker has filed several EEO complaints over the years. The first was filed in 2000 when another employee, Karen Stephan, was allowed to physically assault Ms. Baker in the hallway at work. Another involved a complaint that Ms. Calvert was creating a hostile environment. For these earlier incident at work, Ms. Baker filed earlier EEO complaints, each of which was fully resolved.

Ms. Baker sometimes would experience symptoms associated with allergies and asthma while at work; however, she would keep working through the symptoms. She changed workstations in 2009 to address her health concerns. In 2012, Ms. Baker asked for a cleaner air environment in which to work, and DFAS relocated her workstation to an area that was closer to

a window in April 2012.  On June 1, 2012, Ms. Baker was approved for intermittent leave under the Family Medical Leave Act ("FMLA") for symptoms associated with allergies and asthma.

In October 2012, a memorandum was placed in Ms. Baker's file for the pay period September 30 to October 6, 2012.  The memorandum showed that Ms. Baker worked only one out of ten work days.  She used FMLA time or was absent without leave ("AWOL"), which was later changed to FMLA time, during the other nine days.

On January 18, 2013, a memorandum signed by Ms. Baker was placed in her file noting that she had exhausted her FMLA balance and was not eligible to renew it until June 2, 2013.  She was further advised that any absences for which she did not have leave would be charged as AWOL, which could lead to termination.

Near the end of January 2013, Ms. Baker requested permission to telework, that is, work from home.  Ms. Baker's supervisor asked if she would consider working part-time if allowed to telework, which is what was required of another DFAS employee who wanted to telework.  Ms. Baker indicated that she wanted to think about working part-time.

On February 21, 2013, Ms. Baker was issued a Letter of Reprimand for failing to follow instructions of supervisors, failing to complete mandatory training, and being AWOL.  The letter noted that she had been AWOL for 122.5 hours from January 12, 2013 through February 21, 2013, and she had exhausted her FMLA time in December 2012 and could not renew it until June 2013. She was also warned that her continued absence would lead to more severe discipline.

On March 11, 2013, Ms. Baker was issued a "Warning About Your Absences."  The letter noted that she had last reported to work on February 12, 2013.  From January 14, 2013 through March 8, 2013, Ms. Baker had been AWOL 270 hours, which is the equivalent of thirty-three work days.  She was informed that, because she had been AWOL more than five days, she was

permanently ineligible to participate in the teleworking program. She was also warned that her continued absence could lead to termination.

On March 13 and 14, 2013, Ms. Baker left voicemail messages for her supervisor, explaining that something in the workplace was making her sick and that she was currently sick and waiting for a fever to break. On March 14, 2013, Ms. Baker requested 480 hours of "leave without pay" time to cover her past and future AWOL time due to medical issues. When requested to provide medical documentation to justify her request, Ms. Baker refused. On March 19, 2013, Ms. Baker's supervisor advised her that absences in excess of three work days required medical certification, which Ms. Baker had not submitted since February 7, 2013. Ms. Baker also failed to provide a return-to-work date to DFAS.

On March 22, 2013, Ms. Baker was issued a memorandum requesting medical documentation on the severity of her medical conditions to assist in determining an appropriate accommodation. She was reminded of the accommodations that had been provided to her in the past. She was also reminded that, because she had been AWOL, she was not eligible to participate in DFAS's telework program. On March 27, 2013, DFAS denied Ms. Baker's request for 480 hours of "leave without pay" time to cover her past and future AWOL time.

On April 29, 2013, Ms. Baker's immediate supervisor, Lory Tender ("Ms. Tender"), issued a "Notice of Proposed Removal" to Ms. Baker for being AWOL. The letter noted that Ms. Baker was AWOL for a total of 619.5 hours, or approximately seventy-seven work days, within the time period of January 12, 2013 through the end of April 2013. She had reported for work twice since January 12, 2013. She worked less than a half-day on those two days. The letter reminded Ms. Baker of DFAS's many requests for medical documentation to substantiate the seriousness of her medical conditions, her repeated absences, her repeated promises to return to work, and her

repeated failures to return to work. The letter explained that Ms. Tender was recommending that Ms. Baker's employment with DFAS be terminated. Her appeal rights were also explained.

On May 29, 2013, Ms. Baker's supervisor, Ms. Calvert, issued a "Notice of Decision" to terminate Ms. Baker's employment with DFAS effective May 30, 2013. The termination letter informed Ms. Baker that her separation was the result of her excessive AWOL time. The letter explained that her continued refusal to provide medical documentation to substantiate her excessive AWOL time supported the decision, and her repeated broken promises to return to work were an indication that she was unable to be rehabilitated. It noted that she had not reported to work since April 17, 2013, on which day she had worked only two and a half hours. The letter explained her appeal rights and her Equal Employment Opportunity appeal rights.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*,

476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Ms. Baker, as the nonmoving party, and draws all reasonable inferences in her favor. *Bright v. CCA*, 2013 WL 6047505, at *3 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* (citation and quotation marks omitted).

The Court notes that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However,

> it is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

6

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (citations and quotation marks omitted).

### III.   DISCUSSION

The Secretary of Defense requests summary judgment on Ms. Baker's claim of wrongful termination based on race, color, disability, age, and religious discrimination and retaliation for protected activity because Ms. Baker was lawfully terminated because of her excessive absences from work, and the evidence shows that Ms. Baker cannot establish a *prima facie* case of wrongful termination and discrimination. Ms. Baker responds that summary judgment should not be granted because she has endured over a decade of disparate treatment because of her conversion to Muslim.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, age discrimination in employment practices in the federal government is unlawful. *See* 29 U.S.C. § 633a.

A plaintiff may prove illegal discrimination either directly or indirectly as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by proving that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Goodwin v. Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006).

If the plaintiff can demonstrate these four elements, the burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment

action. *McDonnell Douglas*, 411 U.S. at 802. If a legitimate, nondiscriminatory reason is given for the adverse employment action, the plaintiff "must then establish that there is an issue of material fact as to whether the employer's proffered reasons are merely pretext for unlawful discrimination or retaliation, in order to survive summary judgment." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Under the direct method of proof, a plaintiff asserting a discrimination claim must put forward evidence that the employer's decision to terminate him had a discriminatory motivation. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). A plaintiff may use either direct evidence, such as an admission of discrimination, or circumstantial evidence. *Id.* When presenting circumstantial evidence, the evidence will be sufficient if it constructs a "convincing mosaic" that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citation and quotation marks omitted). The "circumstantial evidence must point directly to a discriminatory reason" for the employer's action. *Ptasznik*, 464 F.3d at 695. A plaintiff attempting to prove a retaliation claim under the direct method of proof must show "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Furthermore, "[a]n employer must have actual knowledge of the employee's protected activity to state a claim for retaliation." *Id.* at 658.

Ms. Baker cannot use the direct method of proof to defeat summary judgment because there is no direct or circumstantial evidence in the record that supports a conclusion or inference of intentional discrimination. Nothing points directly to a discriminatory reason for DFAS's actions. All the evidence in the record points to the conclusion the Ms. Baker's termination was

because she had missed an excessive amount of days from work over a four month period, and she did not have FMLA or other credit for that time away from work.

Therefore, under the indirect method of proof, Ms. Baker must establish a *prima facie* case of discrimination by showing that she is a member of a protected class, she was performing her job satisfactorily, she suffered an adverse employment action, and similarly situated employees outside of her protected class were treated more favorably. While Ms. Baker can show that she is a member of a protected class who suffered an adverse employment action, she cannot show that she was performing her job satisfactorily and similarly situated employees outside of her protected class were treated more favorably.

DFAS points to the numerous correspondence and disciplinary records in the designated evidence that provided warnings to Ms. Baker that her excessive absenteeism would likely lead to termination. DFAS warned her repeatedly that she had exhausted her FMLA balance and was not eligible to renew it until June 2, 2013. She was further advised that any absences for which she did not have leave would be charged as AWOL, which could lead to termination. Ms. Baker's supervisors notified her that her excessive absenteeism was negatively impacting the work of her department and requiring other employees to complete her work. Ms. Baker made repeated promises that she would return to work, and she failed to keep those promises. Case law supports the employers' position that because of her excessive absenteeism, Ms. Baker was not performing her job satisfactorily and was not meeting DFAS's legitimate work expectations. *See, e.g.*, *Contreras v. Suncast Corp.*, 237 F.3d 756, 760–61 (7th Cir. 2001) (proper attendance is an implicit, legitimate expectation of every employer). Ms. Baker disputes the number of hours that she was absent without leave due to the fact that DFAS had not restored leave that was due from a prior EEO settlement. However she has designated no evidence to create a material issue of fact

regarding her failure to perform her job satisfactorily and failure to meet DFAS's legitimate work expectations. Therefore, Ms. Baker cannot establish a *prima facie* case of discrimination to survive summary judgment.

Ms. Baker's excessive absenteeism also serves as a legitimate, nondiscriminatory reason for DFAS's decision to end Ms. Baker's employment. Ms. Baker has presented no evidence to show that this reason is pretextual. This serves as another basis to grant summary judgment to the Secretary of Defense.

In responding to the Secretary of Defense's request for summary judgment, Ms. Baker points out that her request to begin teleworking from home near the end of January 2013 was denied. In her Complaint, Ms. Baker points to a young, white female who was allowed to telework from home. However, Ms. Baker fails to account for the fact that the other employee was working only part-time, not full-time. Management asked Ms. Baker whether she would convert to part-time status to be able to telework from home, and Ms. Baker said she would think about it. She never decided to change to part-time status to be able to telework from home. Thus, this other employee was not a similarly situated employee outside Ms. Baker's protected class, and Ms. Baker did not take steps to secure this reasonable accommodation.

Additionally, Ms. Baker points to the multiple EEO complaints that she filed against DFAS in 2000, 2009, 2010, and 2011. She asserts that she has "endured over a decade of disparate treatment due to [her] change of religious beliefs from Christian to Muslim." (Filing No. 40 at 4.) However, as the Secretary of Defense points out, the incident in 2011 and the other prior EEO complaints were previously settled and resolved, and further, those incidents occurred outside the applicable statute of limitations. Because these incidents were resolved and they are outside of the statute of limitations, Ms. Baker is not allowed to use old EEO complaints to support her 2014

case. Ms. Baker's EEO complaints from 2000, 2009, 2010, and 2011—which were resolved between the parties—do not create a genuine issue of fact regarding DFAS's decision to discharge Ms. Baker because of her excessive absenteeism. Ms. Baker has failed to present any evidence and argument to support a *prima facie* case of discrimination or retaliation to survive summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Secretary of Defense's Motion for Summary Judgment ([Filing No. 36](#)) is **GRANTED**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 2/29/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Tamala Baker
4835 Norwaldo Avenue
Indianapolis, Indiana  46205

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov